**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BRENDAN O'KEEFE, | : | |
| Plaintiff, | : | No. 19-cv-0884-JMY |
| | : | |
| v. | : | |
| | : | |
| LEHIGH UNIVERSITY, et al., | : | |
| Defendants. | : | |

**MEMORANDUM**

**Younge, J.**                                                                                                January 9, 2023

Currently before the Court is the Defendants' Motion for Summary Judgment.  (Motion for Summary Judgment "MSJ", ECF No. 62.)  The Court finds this matter appropriate for resolution without oral argument.  See Fed. R. Civ. P. L.R. 7.1(f).  For the reasons set forth below, Defendants' motion for summary judgment will be granted.

**I.      PROCEDURAL AND FACTUAL BACKGROUND:**

   **A.      Procedural Background:**

Plaintiff filed this lawsuit on March 1, 2019.  After motion practice, he filed a Second Amended Complaint in which he asserts claims against Officers John Doe I & II[1] and Lehigh University (hereinafter "Lehigh").  (Second Amended Complaint (hereinafter "SAC"), ECF No. 17.)  The SAC asserts claims based on theories of false arrest and imprisonment, (*id.* ¶¶ 57-66), coupled with claims for assault and battery against Officers John Doe I & II and Lehigh for events that transpired on the night of April 8, 2017.  (*Id.* ¶¶ 28-43.)  With specific reference to Plaintiff's claim for assault and battery, he alleges that Officers forcibly administered a portable breathalyzer test against his will.  (*Id.* ¶¶ 28-43; Opposition to MSJ page 24, ECF No. 65.)

---

[1] LUPD Officers Patrick McLaughlin and John Torres are the John Doe police officers identified in the SAC.

Finally, the SAC asserts claims against Lehigh based on a theory of breach of contract for its handling of an internal investigation and disciplinary hearing/proceeding related to Plaintiff's alleged violation the "Respect for Self" provision in Lehigh's Code of Conduct for the events that transpired on the night of April 8, 2017.  (SAC ¶¶ 44-56.)

Officers Joe Doe I & II and Lehigh have now filed a motion for summary judgment that is before the Court for disposition.

### B.    Factual Background:

In the fall of 2012, Plaintiff Brendan O'Keefe began attending Lehigh, where he pursued a bachelor's degree in civil engineering.  (Plaintiff's Statement of Disputed Material Facts "Plaintiff's SMF" ¶ 2; ECF No. 65-1.)  While enrolled at Lehigh, Plaintiff was accused of numerous drug, alcohol and academic dishonesty violations of Lehigh's Student Code of Conduct which were resolved through Lehigh's internal disciplinary process.  Plaintiff's disciplinary infractions eventually led to his expulsion in November 28, 2017.

A summary of Plaintiff's disciplinary history while at Lehigh is helpful in understanding the background and context in which events surrounding this litigation transpired.  By way of background and context, Plaintiff admitted to violating Lehigh's Code of Conduct on five separate occasions[2] prior to the final disciplinary charge and arrest which eventually led to his expulsion from Lehigh:

> 1.  October 10, 2012: a Lehigh University resident advisor knocked on Plaintiff's dormitory room door and reported that she smelled marijuana coming from Plaintiff's room.  Plaintiff answered the door with a marijuana joint hanging out of his pocket.  Lehigh University charged Plaintiff with a violation of the University Code of Conduct's "Respect for Self C-1 (drugs)" provision, for which Plaintiff accepted responsibility.  The University placed Plaintiff on disciplinary probation effective October 10, 2012 through May 31, 2013.

---

[2] Lehigh accused Plaintiff of numerous other disciplinary infractions that are not noted herein because Plaintiff contests whether he committed these violations.  The Court highlights only those disciplinary infractions that Plaintiff admits he committed while at Lehigh.

(Plaintiff's SMF ¶¶ 6-8.)   In connection with this violation, Plaintiff was arrested and charged with possession of marijuana in a criminal case captioned *Commonwealth v. O'Keefe*, C.P.-48-CR-3638-2012 and received an ARD disposition, after which the record was expunged.  (Plaintiff's SMF ¶ 7).

2. January 21, 2014: Plaintiff was cited for underage drinking in an incident where he was a passenger in a car that was doing donuts in a parking lot at Lehigh's Goodman Stadium and on a field on campus.  Plaintiff admits he was drinking underage on that occasion. (Plaintiff's SMF ¶ 20).  Lehigh University Police ("LUPD") arrived and tested Plaintiff for alcohol consumption.  As a result of that incident, the University charged Plaintiff with a violation of the Code of Conduct provision regarding "Respect for Self Al (Unauthorized Consumption, Distribution, or Possession)."   (Plaintiff's SMF ¶ 20.)   Plaintiff accepted responsibility, and he was placed on disciplinary probation effective February 11, 2014 through May 31, 2014.  (Plaintiff's SMF ¶¶ 21-22.)  When asked about this incident at his deposition, Plaintiff testified that he does not think he was "doing anything wrong" and that, in retrospect, he feels he should have just refused the LUPD's alcohol breath test so that he would not have gotten into trouble.  (Plaintiff's SMF ¶ 23.)

3. October 20, 2014: a resident advisor reported a strong smell of marijuana coming from Plaintiff's dormitory room, and she contacted LUPD.  LUPD entered Plaintiff's room and found marijuana and drug paraphernalia.  (*SMF* ¶¶ 27-28.)   Plaintiff confirmed under oath that "there was a joint and drug paraphernalia" in his room on October 20, 2014.   (Plaintiff's SMF ¶ 29.)  The University charged Plaintiff with violations of the University Code of Conduct for (1) "Respect for Self C1 (Drugs)" regarding the "unauthorized or illegal use, distribution, or possession of any controlled substance or illegal drugs" and (2) "Respect for Self D1 (Drug Paraphernalia)" regarding the "possession of drug paraphernalia."  Plaintiff took responsibility for the drug possession violation. The University then dropped the paraphernalia charge.  (Plaintiff's SMF ¶ 29.) As a result of the violation, Plaintiff was "placed on disciplinary deferred suspension effective November 14, 2014 through May 31, 2015."  (Plaintiff's SMF ¶¶ 30- 31.)

4. February 19, 2015: while Plaintiff was still on deferred disciplinary suspension, he was suspended for another violation involving drugs, alcohol, and drug paraphernalia in his room.  (Plaintiff's SMF ¶ 34.)  In connection with the February 19, 2015 violation, Plaintiff was charged and pled guilty to use/possession of drug paraphernalia in the case of *Commonwealth v. O'Keefe*, C.P.-48-CR-1790-2015.   (Plaintiff's SMF ¶ 40; *see also* Criminal Docket records, attached as Exhibit T, at 002137-40.)

Specifically, LUPD knocked on Plaintiff's door and requested to perform a search on the basis that an odor of marijuana was coming from Plaintiff's room. Plaintiff at first denied the search, but he then allowed it.  LUPD officers found

"marijuana, a grinder, a one hitter, and other paraphernalia" in Plaintiff's room. Plaintiff also had a bottle of alcohol in his room.  Plaintiff was under 21 years old at the time.  (Plaintiff's SMF ¶ 34.)  The University charged Plaintiff with University Code of Conduct violations for (1) "Respect for Self A1 (Unauthorized Consumption, Distribution, or Possession)," (2) "Respect for Self C1 (Drugs)," and (3) "Respect for Self D1 (Drug Paraphernalia)," and Plaintiff accepted responsibility for all of the charges.  (Plaintiff's SMF ¶ 35-36.)  As a result, the deferred suspension that he was already on at the University turned into a full suspension from March 5, 2015 through December 31, 2015. Plaintiff was also placed on disciplinary deferred suspension effective January 1, 2016 through May 31, 2016.  (Plaintiff's SMF ¶ 36.)

Plaintiff appealed the full suspension sanction but the University denied Plaintiff's appeal.  (Plaintiff's SMF ¶ 38.)  In addition to the above sanctions, the University required Plaintiff to show evidence that he worked with a medical/mental health professional to complete a drug and alcohol assessment and follow the recommended treatment plan. (Plaintiff's SMF ¶ 37.)  Plaintiff began drug and alcohol counseling sessions at High Focus Centers, a treatment center in New Jersey, in an attempt to satisfy that sanction. (*SMF* ¶ 41.) However, Plaintiff failed to follow the requirements of the counseling program and admits that he "put minimal effort into this treatment." (Plaintiff's SMF ¶¶ 42-43.)

5.  May 2016: Plaintiff was caught cheating on a final exam, which he admits.  This occurred while Plaintiff was still on deferred suspension from the February 19, 2015 incident.  (Plaintiff's SMF ¶¶ 48-49.)  The University charged Plaintiff with "Academic Dishonesty A1 (Cheating on Quizzes/Exams)" and "Academic Dishonestly A2 (Unauthorized Sources)."  (Plaintiff's SMF ¶ 50).  Plaintiff accepted responsibility for the cheating violations, and the University again suspended Plaintiff from Lehigh from September 21, 2016 through December 31, 2016.  Plaintiff was also placed on deferred suspension effective January 1, 2017 through May 31, 2017.  (Plaintiff's SMF ¶ 51.)

Plaintiff appealed this suspension sanction.  (Plaintiff's SMF ¶ 52.)  The University denied Plaintiff's appeal and concluded that the sanction was not unduly harsh, in part because Plaintiff had "shown a pattern of poor decision making during his time at Lehigh, even after serving a period of suspension." (Plaintiff's SMF ¶ 53.)

Plaintiff was just coming off his second full suspension at Lehigh in spring 2017, but he was still on deferred suspension.  (Plaintiff SMF ¶¶ 54-55.)  He was not registered for any courses at Lehigh, but was living near campus in Bethlehem.  (*Id.*)  Plaintiff testified that he drank at his apartment and went to a bar located on or near campus to socialize on the night of

April 8, 2017.  (Plaintiff's SMF ¶¶ 56-63.)  He testified at deposition that he drank between 5-7 alcoholic beverages, and he admits that he could feel the effects of the alcohol when he was walking home around 11:00 p.m. on the night of April 8, 2017.  (Plaintiff's SMF ¶¶ 56-63.)  The path that Plaintiff walked took him along Morton Street – a small side street in Bethlehem which had an uneven broken sidewalk.  Plaintiff alleges he tripped, fell and was injured while traversing the uneven sidewalk on Morton Street.  He alleges that the sidewalk was in such poor condition that he decided to walk along the roadway instead of traversing the sidewalk.  (Plaintiff SMF ¶¶ 64-68.)

An eyewitness, Antonio Estrella, testified at his deposition that he saw a person run across the street and nearly get hit by a car.  (Deposition Antonio James Estrella page 10, MSJ Ex. A-3, ECF No. 62-5.)  Mr. Estrella decided to investigate and that is when he first met Plaintiff.[3]  (*Id.*)  He testified that it was "pretty clear" Plaintiff had been drinking, and Mr. Estrella had "to put [his] arm around [Plaintiff] and help him walk in a straight line" because Plaintiff "couldn't walk very sturdy."  (*Id.* page 12; Plaintiff's SMF ¶¶ 71-74.)  Mr. Estrella also testified that Plaintiff "couldn't really talk in super coherent sentences."  (Estrella Deposition page 12.)  A second passerby, Adam Sawicki, testified that he saw Plaintiff crouching on the ground in the street, and he told Plaintiff to get out of the street.  (Deposition Adam Sawicki page 20, MSJ Ex. A-4, ECF No. 62-6.)  Mr. Sawicki testified that Plaintiff appeared to have been drinking and was somewhat impaired, and he could tell that Plaintiff had been drinking by the way Plaintiff spoke.  (*Id.* page 31.)  Both Mr. Estrella and Mr. Sawicki testified that Plaintiff had just gotten up off of the ground when LUPD Officers Patrick McLaughlin and John Torres arrived on the scene.  (Estrella Deposition page 13; Sawicki Deposition page 20.)

---

[3]  Plaintiff identifies some inconsistencies in Mr. Estrella's testimony.  Plaintiff points out that Mr. Estrella did not identify exactly who he saw run across the street on the night of April 8, 2017.

Officers Patrick McLaughlin and John Torres detained Plaintiff and performed a preliminary or portable breathalyzer test on him.[4]  (Plaintiff's SMF ¶¶ 77-90.)  Officer Torres claimed that the portable breathalyzer test registered a .341 blood alcohol concentration ("BAC").  (Plaintiff's SMF ¶ 86.)  However, Plaintiff disputes the accuracy of the portable breathalyzer test results.  Plaintiff argues that the extremely high BAC reading does not correlate with the amount of alcohol that he drank on the night of April 8, 2017.  Plaintiff also highlights the fact that Officer Torres did not activate the memory or print function on the portable breathalyzer test; therefore, the data was not recorded or saved in a retrievable format.  (*Id.*)  Plaintiff alleges that he did not consent to the portable breathalyzer test which he avers was forcibly performed by either Officer McLaughlin or Torres.  (Plaintiff's SMF ¶¶ 77-110.)  Plaintiff's allegation that he was hurt during the portable breathalyzer test is critical to his claim based on a theory of assault and battery.  (Plaintiff's SMF ¶¶ 77-110.)

Officer McLaughlin and Torres cited Plaintiff for public drunkenness based not just on the BAC but on his behavior, odor of alcohol, impaired speech, and other factors.  (Plaintiff's SMF ¶¶ 77-94.)  EMS was called and transported Plaintiff to St. Luke's Hospital in Bethlehem.  (Plaintiff's SMF ¶ 95.)  Plaintiff told the ER doctor that he had been drinking, and emergency response and hospital records indicate that Plaintiff had slurred speech and was walking with a staggered gait, among other things.  (Plaintiff's SMF ¶¶ 95-109.)  Plaintiff subsequently pled guilty to the charge of public drunkenness under 18 Pa. C.S. § 5505 in Northampton County Magisterial District Court.  (Plaintiff's SMF ¶¶ 112-114.)

Lehigh also cited Plaintiff for violating the "Respect for Self" provision in Lehigh's Code of Conduct, which prohibits, in part, "[t]he consumption or distribution of alcohol or other drugs

---

[4]  Officer McLaughlin disputes that allegation that he was involved in administering the portable breathalyzer test.

in a manner detrimental to one's health and safety (or the health and safety of others)."
(Plaintiff's SMF ¶¶ 115-118.)  The University conducted an in-person disciplinary hearing in
which Plaintiff participated.  (Plaintiff's SMF ¶¶ 115-164.)  Lehigh determined that Plaintiff
violated this provision of the Code of Conduct and expelled him on November 28, 2017.
(Expulsion Letter 11/28/17, MSJ Ex. PP, ECF No. 62-41 page 4; Plaintiff SMF ¶¶ 160-164.)  In
reaching its conclusion that Plaintiff violated the provision for Respect for Self, the internal
disciplinary hearing panel/committee relied on eye witnesses' accounts of what occurred on the
night of April 8, 2017 provided by Mr. Estrella, Mr. Sawicki, Officer McLaughlin, Officer
Torres and Plaintiff's medical records.  The hearing panel/committee did not rely solely on the
result of the portable breathalyzer test; rather, as the panel noted in its rationale, "LUPD states a
BAC of .34 and while the panel recognizes this may not be 100% accurate, it is more likely than
not that Brendan was highly intoxicated" based on all the evidence. (Expulsion Letter 11/28/17;
Plaintiff SMF ¶ 163.)

        In selecting the sanction of expulsion, Lehigh's disciplinary committee took into account
Plaintiff's long history of conduct and criminal violations during his time at Lehigh, and his
failure to learn from these many violations.  (Expulsion Letter 11/28/17; Plaintiff's SMF ¶¶ 161-
163.)  Specifically, as detailed above, Plaintiff had been placed on probation and suspended for
multiple semesters in relation to numerous drug and alcohol violations as well as cheating on a
final exam.  (Expulsion Letter 11/28/17; Plaintiff's SMF ¶¶ 1-55.)  Plaintiff also struggled
academically while at Lehigh, and he was also placed on academic probation in 2013 due to his
extremely low GPA.  (Expulsion Letter 11/28/17; Plaintiff's SMF ¶¶ 9-10, 12-13, 17-19, 33, 47.)

        Lehigh's disciplinary committee determined that "it would be in [Plaintiff's] best interest
and well-being to continue his education at an alternative institution."  (Expulsion Letter

11/28/17; Plaintiff's SMF ¶ 163.)  Plaintiff appealed, and an appeals committee comprised of separate individuals upheld the expulsion.  (Plaintiff's SMF ¶¶ 165-71.)  Following his expulsion from Lehigh, Plaintiff attended classes at Rutgers and later went on to attend classes at Manhattan College where he earned a degree in civil engineering with a GPA over 3.9. (Plaintiff's SMF ¶¶ 177-81.)

## II.    LEGAL STANDARD FOR SUMMARY JUDGMENT:

Summary Judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012).  To defeat a motion for summary judgment, there must be a factual dispute that is both genuine and material. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 24-49 (1986); *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008).  A material fact is one that "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248.  A dispute over a material fact is "genuine" if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party."  *Id*.

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact.  *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016).  When the movant is the defendant, they have the burden of demonstrating that the plaintiff "has failed to establish one or more essential elements of her case."  *Burton v. Teleflex Inc.,* 707 F.3d 417, 425 (3d Cir. 2013).  If the movant sustains their initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial."  *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal quotation

marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986)).

At the summary judgment stage, the court's role is not to weigh the evidence and

determine the truth of the matter, but rather to determine whether there is a genuine issue for

trial.  *See Anderson*, 477 U.S. at 249; *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d

Cir. 2007).  In doing so, the court must construe the facts and inferences in the light most

favorable to the non-moving party.  *See Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*,

258 F.3d 132, 140 (3d Cir. 2001).  Nonetheless, the court must be mindful that "[t]he mere

existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there

must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S.

at 252.

**III.    DISCUSSION:**

**A.    Summary Judgment is Appropriate as to Plaintiff's Claim for False Arrest
and Imprisonment:**

Plaintiff will not be permitted to proceed with claims brought on legal theories of false

arrest or false imprisonment.  Plaintiff was arrested and detained by Officers McLaughlin and

Torres in connection with charges of public drunkenness to which Plaintiff later pled guilty.

Plaintiff relies on the operative facts from this arrest and detention in support of his claims for

false arrest and false imprisonment.  However, these claims fail because Plaintiff pled guilty to

charges of Public Drunkenness in violation of 18 Pa. C.S. § 5505 in Northampton County

Magisterial District Court in *Commonwealth v. Brendan J. O'Keefe*, Docket No. MJ-03210-NT-

0000173-2017.  (Plaintiff SMF ¶ 112-114; Criminal Docket, MSJ Ex. T, at 002130-32, ECF No.

62-48.)

Plaintiff's claims for false arrest and false imprisonment are based on his argument that Officers McLaughlin and Torres lacked probable cause to arrest or detain him on the night of April 8, 2017.  (SAC ¶¶ 60, 62, 64.)  In this regard, both legal theories of liability bear similarity in that they require Plaintiff to show that (1) he was detained, and that (2) the detention was unlawful.  *Braswell v. Wollard*, 243 A.3d 973, 979 (Pa. Super. Ct. 2020); *see also Olender v. Twp. of Bensalem*, 32 F.Supp.2d 775, 791 (E.D. Pa. 1999) ("False arrest and false imprisonment are essentially the same claim.").  "To make out either a false arrest or false imprisonment claim, [a plaintiff needs] to demonstrate that his arrest was unsupported by probable cause."  *White v. Andrusiak*, 655 F. App'x 87, 90 (3d Cir. 2016); *Stief v. Roberson Twp.*, No. 20-6272, 2021 WL 5112249, at *6 (E.D. Pa. Nov. 3, 2021) (citing *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 641 (E.D. Pa. April 9, 2014) (explaining that to establish a false arrest claim "a plaintiff must demonstrate that the officers conducting the arrest lacked probable cause.")).

Plaintiff cannot establish that he was unlawfully detained – that he was arrested or detained without probable cause – because he pled guilty to the criminal charges brought against him in connection with the arrest or detention by Officers McLaughlin and Torres.  "[A] guilty plea – even one for a lesser offense – does not permit a later assertion of no probable cause."  *Walker v. Clearfield Cty. Dist. Att'y*, 413 F. App'x 481, 483 (3d Cir. 2011); *Stief*, 2021 WL 5112249, at *6 ("A plaintiff who later pleads guilty cannot argue that the preceding arrest was without probable cause, even if the guilty plea is for a lesser offense."); *LeBlanc v. County of Lancaster*, No. 09-1685, 2009 WL 3422991, at *3 (E.D. Pa. Oct. 21, 2009) ("When there is a guilty plea or conviction, probable cause for the arrest is conclusively established."); *Akins v. City of Erie Police Dep't*, No. 18-395, 2020 WL 838564, at *4 (W.D. Pa. Feb. 20, 2020) (explaining that "[p]robable cause is conclusively established in a § 1983 false arrest action

where the record demonstrates that the plaintiff was convicted of one of the offenses upon which

the arrest was based, so long as the conviction has not been overturned.").  Moreover, a "guilty

plea constitutes a judicial admission, not only of the crime, but of all of the elements of the

criminal charge."  *State Farm Fire & Cas. Co. v. Cooper*, No. 00-5538, 2001 WL 1287574, at *5

(E.D. Pa. Oct. 24, 2001), abrogated on other grounds as recognized by *MMG Ins. Co. v. Guiro,

Inc.*, 432 F. Supp. 3d 471 (M.D. Pa. 2020).  "Generally, one who pleads guilty to a crime is

bound by that conviction.  In other words, he cannot collaterally attack or deny his criminal acts

in other legal proceedings."  *City of Phila. v. City of Phila. Civ. Serv. Comm'n*, 895 A.2d 87, 95

(Pa. Commw. Ct. 2006) (citing *Dep't of Transp. v. Mitchell*, 535 A.2d 581, 584 (Pa. 1987)).

"The existence of probable cause is a 'complete defense' to false arrest and false imprisonment

claims."  *Bishop v. Upper Darby Police Dep't*, No. 15-6069, 2021 WL 4818272, at *5 (E.D. Pa.

Oct. 14, 2021) (quoting *Langford v. Gloucester Twp. Police Dep't*, 787 F. App'x 120, 122 (3d

Cir. 2019)).

      Assuming arguendo that Plaintiff had asserted claims under 42 U.S.C. § 1983 – which he

did not – these claims would still fail based on the Supreme Court's holding in *Heck v.

Hemphrey,* 512 U.S. 477 (1994).  In *Heck*, the Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or
> imprisonment, or for other harm caused by actions whose unlawfulness would
> render a conviction or sentence invalid, a § 1983 plaintiff must prove that the
> conviction or sentence has been reversed on direct appeal, expunged by executive
> order, declared invalid by a state tribunal authorized to make such determination,
> or called into question by a federal court's issuance of a writ of habeas corpus, 28
> U.S.C. § 2254.

*Heck*, 512 U.S. at 486–87.

      The Court in *Heck* explained that "the district court must consider whether a

judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* "The United States Court of Appeals for the Third Circuit has determined that a guilty plea is sufficient to bar a subsequent section 1983 claim under *Heck*." *Rosembert*, 14 F. Supp. 3d at 640 (citing *Gilles v. Davis*, 427 F.3d 197, 209 n.8 (3d Cir. 2005)); s*ee, e.g., Mosby v. O'Brie*, 532 F. App'x 84, 85 (3d Cir. 2013) (holding that plaintiff was "barred from maintaining an action for" false arrest and false imprisonment where he had "pled guilty to charges stemming from the arrest at issue" and the court could "only conclude that absent probable cause, the entirety of the evidence against him in …the criminal case would have been suppressed.").

In response to the Defendant's motion for summary judgment, Plaintiff argues that his guilty plea to the summary offense of public drunkenness should not be admissible to establish facts in this lawsuit which affords a right to jury trial.  (Opposition to MSJ page 68-69.)  The Court rejects the Plaintiff's argument that his guilty plea to a summary offense should be inadmissible in a subsequent lawsuit for false arrest or false imprisonment arising from the very same facts.  (Opposition to MSJ page 68-69; ECF No. 65.)  Plaintiff's argument defies logic because he essentially pled guilty to the facts that established the probable cause for his arrest or detention; therefore, his case cannot proceed on theories of false arrest and imprisonment.

### B.    Summary Judgment is Appropriate as to Plaintiff's Claim for Assault and Battery:

Plaintiff's assault and battery claim arises from the fact that Officers McLaughlin and/or Torres administered a portable breathalyzer test on the night of April 8, 2017.[5]  Plaintiff alleges

---

[5]  As previously mentioned, Officer McLaughlin disputes whether he was involved with administering the portable breathalyzer test.  The Parties also dispute whether Plaintiff was sitting in the ambulance or standing outside the ambulance when the portable breathalyzer test was performed.

that while he was detained in handcuffs and sitting in the ambulance waiting to be transported to

the hospital, Officers McLaughlin and/or Torres conducted what he characterizes as a forcible

breathalyzer test.  Plaintiff alleges that he did not consent to the test.  At deposition, when

questioned about this claim, Plaintiff was unable to identify any specific tangible injury to his

mouth or lips.  He affirmatively testified that there were either no cuts or bruises to his lips or the

inside of his mouth and/or that he could not recall whether he suffered cuts or bruises.

(Plaintiff's SMF ¶ 90.)  He further testified that he sought no medical treatment for any

purported injury to his mouth or lips despite being in an ambulance with EMS workers and later

being transported to the hospital where he was seen by medical professionals.  (*Id.*)  Although

Plaintiff sought counseling for the events that transpired on April 8, 2017 and the related

expulsion from Lehigh, Plaintiff sought no specific treatment for psychological injury

purportedly caused by the portable breathalyzer test.

      The question of whether force is "excessive" is the same under both a Pennsylvania state

law claim for assault and battery and a Section 1983 claim for "excessive force."  *Torres v.*

*Allentown Police Dep't*, No. 13-3066, 2016 WL 5404476, at *4 (E.D. Pa. Sept. 27, 2016)

(explaining that a "police officer's use of force in making a lawful arrest constitutes an assault or

battery when the amount of force used is unreasonable.  The analysis is therefore similar to that

for excessive force under § 1983."); see also *Garey v. Borough of Quakertown*, No. 12-799, 2012

WL 3562450, at *5 (E.D. Pa. Aug. 20, 2012) (holding that "Plaintiff has adequately stated a

claim for excessive force.  Therefore, Plaintiff has also adequately stated a claim for assault and

battery.").  Cases analyzing claims of excessive force under Section 1983 claims are pertinent

here.

"[T]he appropriate standard for determining an officer's potential liability for assault and battery when making an arrest is whether excessive or unreasonable force was used in effectuating that arrest," not whether any contact was made at all. *Scott v. Casey*, No. 16-1149, 2018 WL 835087, at *4 (E.D. Pa. Feb. 13, 2018) (citing *Glass v. City of Phila.*, 455 F. Supp. 2d 302, 366 (E.D. Pa. 2006)). "A police officer may use reasonable force to prevent interference with the exercise of his authority or the performance of his duty. In making a lawful arrest, a police officer may use such force as is necessary under the circumstances to effectuate the arrest." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994). "The reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery." *Id.* "A police officer may be held liable for assault and battery when [the factfinder] determines that the force used in making an arrest is unnecessary or excessive." *Scott v. Casey*, No. 16-1149, 2018 WL 835087, at *4 (E.D. Pa. Feb 13, 2018) (citing *Renk*, 641 A.2d at 293). "Thus, '[t]he appropriate standard for determining an officer's potential liability for assault and battery when making an arrest is whether excessive or unreasonable force was used in effectuating that arrest.'" *Scott*, 2018 WL 835087, at *4 (citing *Glass v. City of Phila.*, 455 F. Supp. 2d 302, 366 (E.D. Pa. 2006)).

Excessive force claims are "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor,* 490 U.S. 386, 388 (1989). The operative question in excessive force cases is "whether the totality of the circumstances justifie[s] a particular sort of search or seizure." *Tennessee v. Garner*, 471 U. S. 1, 8 (1985). The Court analyzes this question "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," making "allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly

evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.  In assessing reasonableness, the court should balance the individual's interests against the government's interests and pay careful attention to the facts and circumstances of the case, including the severity of the crime at issue, whether the suspect poses an immediate threat to safety, and whether the suspect is resisting arrest or a flight risk.  *Id.* at 396-97; *Garner*, 471 U.S. at 8 (1985).

Fourth Amendment reasonableness evades a clear-cut test; instead, it calls for an assessment of the officer's behavior under the "totality of the circumstances," in light of the "facts and circumstances confronting them." *Estate of Smith v. Morasco*, 318 F.3d 497, 515 (3d Cir. 2003) (*citing Graham*, 490 U.S. at 397)).  Proper application of this test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.  The test also takes into account the possibility that the individuals subjected to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time. *Id.; Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997).  Finally, the test for excessive force takes into account whether "the physical force applied was of such an extent as to lead to injury." *Sharrar*, 128 F.3d at 822.

"Generally, an alleged injury must rise above the *de minimis* level in order for a constitutional claim to arise.  At the very least, the level of injury is highly indicative of the objective reasonableness of a search." *Bensinger v. Mullen*, No. 99-1771, 2000 WL 1100781, at

*2 (E.D. Pa. Aug. 4, 2000) (granting summary judgment on excessive force claim under 42

U.S.C. § 1983 where parties disputed whether plaintiff was beaten during his arrest but it was

"undisputed that Plaintiff refused medical treatment on the night of his arrest, and has not

subsequently been treated for injuries arising out of the arrest" such that "it seems clear that his

injuries are *de minimus*"); see also *Thomas v. City of Erie*, 236 F. App'x 722, 776 (3d Cir. 2007)

(granting summary judgment on excessive force claim where plaintiff claimed that police

"forced him down to the ground in the bar and pulled his hands behind his back, and . . .

allegedly hit his head against the police van when they were placing him inside," but there was

no evidence that police hit plaintiff's head "intentionally or that Thomas suffered any injury" and

"[t]he only doctor to ever see Thomas simply told him to go home and 'take it easy'"); *Gilles v.

Davis*, 427 F.3d 197, 207–208 (3d Cir. 2005) (affirming summary judgment on excessive force

claim because the "facts alleged constitute insufficient evidence as a matter of law for excessive

force by handcuffing" where plaintiff complained that handcuffs were too tight and caused pain

but he did not exhibit sufficient indications of pain and did not "seek or receive medical

treatment after the fact").

 Plaintiff's claim for assault and battery fails for lack of injury – tangible or otherwise.

The fact that Plaintiff suffered some nebulous discomfort in his lips or mouth during what he

characterized as a forcible breathalyzer test does not warrant a federal jury trial on this claim.

*Creveling v. Columbia Cty.*, No. 07-0661, 2008 WL 1826907, at *5-6 (M.D. Pa. Apr. 22, 2008)

(Summary judgment granted on claims of excessive force and assault and battery because

plaintiff did not suffer significant injuries and did not seek medical treatment).

 The Court also believes that the actions of the Officers in giving Plaintiff a portable

breathalyzer test were reasonable in light of the circumstances that existed on the night of April

8, 2017.  Plaintiff was in the process of being transported by ambulance to an emergency room to determine if he needed medical attention when either Officer McLaughlin or Torres conducted the breathalyzer test.  These Officers will not be exposed to civil liability for attempting to obtain a reading of Plaintiff's blood alcohol content under these circumstances – when Officers were essentially first responders coming to Plaintiff's aid.  The Court is mindful that this issue is not being presented in the context of a suppression motion in a criminal case.  Instead, Plaintiff is attempting to establish civil liability for an alleged error in judgment – that is, in not obtaining consent prior to conducting breathalyzer test.

  **C.**  **Summary Judgment is Appropriate as to All of Plaintiff's Claims for Breach of Contract:**

  Plaintiff's breach of contract claim is based on an investigation and internal disciplinary proceeding that Lehigh instituted following the events that transpired on April 8, 2017 and Plaintiff's entry of a guilty plea to criminal charges of public drunkenness.  As previously mentioned, Lehigh brought an internal disciplinary proceeding against Plaintiff based on allegations that he violated Lehigh's Code of Conduct – Respect for Self.  Lehigh ultimately determined that Plaintiff violated the Code of Conduct on repeated occasions and expelled him. In this litigation, Plaintiff argues that Lehigh's investigation into the facts surrounding the April 8, 2017 incident did not measure up to the standards established by the terms of the Student Handbook.  He further argues that internal disciplinary hearing and related proceedings were deficient and in breach of the terms of the Student Handbook.

  Under Pennsylvania law, the relationship between a student and a private educational institution is contractual.  *Reardon v. Allegheny College*, 926 A.2d 477, 480 (Pa. Super. 2007) (citing *Barker v. Trustees of Bryn Mawr Coll.*, 278 Pa. 121, 122 (Pa. 1923)); *Swartley v. Hoffner*, 734 A.2d 915, 919 (Pa. Super. Ct. 1999); *Boehm v. Univ. of Pa. Sch. of Veterinary*

*Med.*, 573 A.2d 575, 579 (Pa. Super. Ct. 1990).  A student seeking to bring a breach of contract claim against an educational institution must allege "a specific contractual undertaking which was breached, clearly and directly resulting in at least some demonstrable damages." *See Cavaliere v. Duff's Bus. Inst.*, 605 A.2d 397, 401 (Pa. Super. 1992); *see also Vurimindi v. Fuqua Sch. of Bus.*, 435 F. App'x 129, 133 (3d Cir. 2011) (citing *Swartley v. Hoffner*, 734 A. 2d 915, 919 (Pa. Super. 1999).

In *Psi Upsilon of Phila. v. University of Pennsylvania*, 591 A.2d 755, 758 (Pa. Super. 1991), the Superior Court explained the difference between the contractually obligated processes afforded to students at public universities compared to students at private institutions:

> Generally, it has been said that courts are more reluctant to interfere in the disciplinary proceedings of a private college than those of a public college. . . . A majority of courts have characterized the relationship between a private college and its students as contractual in nature. Therefore, students who are being disciplined are entitled only to those procedural safeguards which the school specifically provides.

591 A.2d at 758-59 (citing *Boehm*, 573 A.2d at 578-79).

Plaintiff is entitled to receive the disciplinary process the University promises and no more or no less.  *Psi Upsilon of Phila.*, 591 A.2d at 758; see also *Kim v. Villanova University*, No. 21-1879, 2021 WL 4243442, at *3 ("Courts are deeply reluctant to get involved in the disciplinary process of private universities," unless "such processes fail to 'comport with basic notions of due process and fundamental fairness.'"). "While Pennsylvania law allows a student to sue a private university for breach of contract, 'the allegations must relate to a specific and identifiable promise that the school failed to honor.'" *David v. Neumann Univ.*, 187 F. Supp. 3d 554, 558 (E.D. Pa. 2016) (quoting *Vurimindi*, 435 F. App'x. at 133.  The general rule "has been that where a private university or college establishes procedures for the suspension or expulsion

of its students, substantial compliance with those established procedures must be had before a

student can be suspended or expelled." *Boehm*, 573 A.2d at 579.

> **C. i.   Summary Judgment is Appropriate on Plaintiff's Breach of Contract Theory Based  on His Argument that Lehigh failed to Provide Him with A Fundamental Fair Disciplinary Proceeding:**

Plaintiff proceeds on a breach of contract theory and argues that Lehigh breached

provisions in its own Student Handbook when it failed to provide him with fundamental fairness

during the internal disciplinary proceeding.  (Opposition to MSJ page 38, ECF No. 65; SAC ¶¶

46-47.)  Plaintiff cites to language in the Student Handbook in support of his argument that

Lehigh promised him that it "had an interest in providing fundamental fairness in all conduct

matters," and that it would provide a fundamentally fair process when investigating and

adjudicating violations of the student code of conduct.  (Opposition to SJM page 38 (citing to

Lehigh's Student Handbook Article VI. I at 639, MSJ Ex. BB, ECF No. 63-1.)

"Pennsylvania courts have made clear that, at private universities, 'basic principles of ...

fundamental fairness [are] adhered to [when] the students involved[ ] ... [are] given notice of the

charges and evidence against them, [are] allowed to be present and to participate in the hearing

assisted by faculty, to call their own witnesses and to cross-examine the witnesses against them,

and [are] fully apprised of the findings of the [h]earing [p]anel.'" *Doe v. Univ. of Scis.*, 961 F.3d

203, 214 (3d Cir. 2020) (quoting *Psi Upsilon of Phila.,* 591 A.2d at 758).  "In short, notions of

fairness in Pennsylvania law include providing the accused with a chance to test witness

credibility through some form of cross-examination and a live, adversarial hearing during which

he or she can put on a defense and challenge evidence against him or her." *Univ. of Scis.*, 961

F.3d at 214.

Plaintiff was afforded fundamental fairness in accordance with the terms of the Student Handbook as defined under Pennsylvania Law. Plaintiff received notice of the charges and evidence against him. Lehigh mailed letters to Plaintiff dated April 10, 2017, September 16, 2017, and November 1, 2017, advising him of the pending internal disciplinary proceeding. (Defendant's SMF ¶¶ 118-120, 125- 27.) Lehigh avers that these letters contained copies of (1) Lehigh's "Fundamentally Fair Process & Responsibilities;" (2) a summary of the "Lehigh University Disciplinary Process;" and (3) a set of "Pre-Meeting Reflection Questions." (Defendant's SMF ¶¶ 120, 125-27.) On November 13, 2017, Plaintiff received written notice of the date, time and location of the internal disciplinary hearing as well as the charges against him and the identity of the members of his hearing panel. (Plaintiff's SMF ¶ 138.) Plaintiff also attended a pre-hearing interview with Dean Mulvihill where Dean Mulvihill explained the disciplinary hearing process to Plaintiff and his rights and responsibilities regarding the same. (Plaintiff's SMF ¶ 139.) At the pre-hearing interview, Plaintiff and Dean Mulvihill completed, and Plaintiff signed, the "Pre-hearing Interview Checklist" that he had received in relation to his hearing. (Plaintiff's SMF ¶ 140.) Furthermore, Plaintiff testified that, prior to the conduct hearing, he received a packet of the materials that had been gathered in relation to his conduct case. Plaintiff had the opportunity to review the charges against him as well as the packet of materials in depth. (Plaintiff's SMF ¶¶ 143-144.)

It is also undisputed that Plaintiff was "allowed to be present and to participate in the hearing assisted by faculty, to call [his] own witnesses and to cross-examine the witnesses against [him], and [was] fully apprised of the findings of the [h]earing [p]anel.'" *Univ. of Scis.*, 961 F.3d at 214. Plaintiff attended and participated in his live, in-person disciplinary hearing on November 28, 2017. (Plaintiff's SMF ¶¶ 152-158.) The hearing panel members included

Lehigh faculty members Anne Anderson and Irina Panovska, former Assistant Dean Ashley Baudouin, and a student member, Theresa Ridings.  Dean Mulvihill served as the moderator, or conduct officer, for the hearing.  (Plaintiff's SMF ¶¶ 152-153.)

Plaintiff concedes that he had the opportunity to call witnesses at the hearing and to ask questions of witnesses or anyone present at the hearing.  (Plaintiff's SMF ¶ 147.)  Plaintiff also concedes that he had the right to advisory assistance at the hearing and could have had an advisor attend on his behalf if he wanted, but he chose not to do so.  (Plaintiff's SMF ¶ 145.)  Plaintiff also testified that he was given the opportunity to hear all testimony at the hearing and to present relevant information on his behalf.  (Deposition Brendon O'Keefe, MSJ Ex. A-1, ECF No. 62-3; Plaintiff's SMF ¶ 146.)  Lastly, Plaintiff was fully apprised of the findings of the hearing panel, appealed the initial decision, and received notice of the outcome on appeal.  (Plaintiff's SMF ¶¶ 160-73.)  Under these facts, Plaintiff was provided with fundamental fairness during the internal investigation and internal disciplinary proceeding for violation of the Student Code of Conduct.

### C. ii.   Summary Judgment is Appropriate on Plaintiff's Breach of Contract Theory Based  on His Argument that Lehigh failed to Investigate or Gather Evidence/Facts Surrounding the April 8, 2017 Incident that Led to His Guilty Plea and the Internal Disciplinary Proceeding:

Lehigh's investigation into the facts and evidence relevant to the April 8, 2017 incident was sufficient to satisfy its contractual and legal obligations under the terms of the Student Handbook.  Plaintiff argues that under the terms of the Student Handbook, Lehigh had an obligation to assign a conduct officer – in this case Dean Mulvhill – who would "[c]oordinate the gathering of all facts regarding [Plaintiff's alleged] violation of [the Lehigh] Code of Conduct and see that all known relevant facts [were] presented at a hearing."  (Opposition to MSJ page 43, (citing to Exhibit 27, the Lehigh's Student Handbook, Article IX, Section I.A.1 and 2 at 649); SAC ¶ 48.)

Plaintiff alleges that Lehigh breached the terms of the Student Handbook when Dean Mulvhill failed to produce a copy of the LUPD incident report for him to review and introduce into evidence during the internal disciplinary proceeding.  (Opposition to MSJ page 44.) Plaintiff also alleges that Dean Mulvhill had an obligation to subpoena the body camera footage of Officers' McLaughlin and Torres and present it as evidence at the hearing but failed to do so. (*Id.* page 45.)  Plaintiff argues that he could have used the LUPD incident report to establish that he was capable of speaking coherently enough for Officers McLaughlin and Torres to understand what he was saying on the night of April 8, 2017.  (*Id.* page 46.)  He also argues that the body camera footage would have provided an accurate account of what transpired on the night of April 8, 2017.  (*Id.* page 45.)

Plaintiff's claim fails because the investigation conducted by Lehigh substantially complied with its established procedures.  *Dempsey v. Bucknell University*, No. 11-1679, 2012 WL 1569826, at *18 (M.D. Pa. May 3, 2012) (stating that plaintiff failed to allege a breach of contract claim based on failure "to conduct an adequate investigation" because the University complied with the student handbook by performing the investigation it completed).  Lehigh conducted investigation relating to Plaintiff's conduct violation that included interviewing the two known third-party eye-witnesses – Mr. Estrella and Mr. Sawicki – obtaining a summary of the incident report from the LUPD, reviewing the medical records and the character statement provided by Plaintiff, and permitting Plaintiff to present additional evidence.  (Plaintiff's SMF ¶¶ 130-37, 144, 146-47.)  Plaintiff was free to investigate and call his own witnesses if he felt it would be helpful, and Plaintiff presented photographs to establish the poor condition of the sidewalk on Morton Street which he alleges caused him to fall and walk in the street.  (Plaintiff

SMF ¶ 157.)  Lehigh's investigation yielded enough evidence for a disciplinary proceeding at a private university.

Plaintiff's argument regarding production of the LUPD incident report fails because nothing in the report contradicts the other evidence presented at the internal disciplinary proceeding.  The LUPD police report indicates that Plaintiff was laying on the ground or was getting up off of the ground when Officers approached, his speech was slurred and that he was emitting a strong smell of alcohol.  (LUPD Incident Report, MSJ Ex. X, ECF No. 62-54.)  The fact that Officers were able to understand what Plaintiff was saying simply does not establish whether he was sober, drunk or intoxicated.  With regard to body camera footage, Plaintiff cannot establish that it was available to the public at the time of his internal disciplinary proceeding.  (See Reply Br. Page 21., ECF No. 71.)

Therefore, Plaintiff's breach of contract theory based on the argument that Lehigh failed to investigate is without merit, and summary judgment on this claim will be granted.

### C. iii.   Summary Judgment is Appropriate on Plaintiff's Breach of Contract Theory Based  on His Argument that Lehigh Failed to Afford the Presumption that He Had Not Violated the Student Code of Conduct:

Plaintiff argues that Lehigh failed to adhere to provisions in the Student Handbook stating that "the hearing body shall consider all respondents not responsible until such time as sufficient evidence is present[ed] to the contrary." (Opposition to MSJ page 48 (citing the Lehigh's Student Handbook Article VI, Section II.A., MSJ Ex. BB, ECF No. 63-1); SAC ¶ 53.) In support of this argument, Plaintiff points to a line of questioning by one of the hearing panel members related to Plaintiff's alcohol consumption at the time of the internal disciplinary proceeding.  (Opposition to MSJ page 48-49.)  A plain reading of the line of questioning cited by the Plaintiff illustrates that no breach of any purported guaranteed presumption of innocence

occurred.  The hearing panel member simply asked Plaintiff a question about the frequency of his alcohol consumption at the current time of the hearing.

The Student Handbook guaranteed Plaintiff a hearing before a committee or panel which was formed to hear and evaluate the facts and evidence surrounding his alleged violation of the Student Code of Conduct.  The Student Handbook was silent as to when each committee or panel member would form an opinion as to whether Plaintiff violated the Student Code of Conduct. Therefore, even if a committee or panel member reached the conclusion that Plaintiff violated the Code of Conduct prior to the conclusion of the hearing, this does not establish that Lehigh breached its contract with Plaintiff.  The hearing body received sufficient evidence to reach the conclusion that Plaintiff violated the Student Code of Conduct pertaining to Respect for Self. Therefore, Plaintiff's breach of contact claim on this theory fails and summary judgment is appropriate.

### C. iv.   Summary Judgment is Appropriate on Plaintiff's Breach of Contract Theory Based  on His Argument that Lehigh Failed to Provide a Safe and Secure Environment as Guaranteed by the Student Handbook.

Plaintiff argues that Lehigh breached the promise "that the Lehigh University Police Department would provide a secure and safe environment."  (Opposition to MSJ page 50 (citing to Lehigh's Student Handbook page 616, MSJ EX. BB, ECF No. 63-1).)  Specifically, Plaintiff cites the "University Resources" directory in the Student Handbook that lists various offices and departments at Lehigh along with a short statement or summary about each department's services.  (*Id.*)  In relation to LUPD, the resources directory briefly states that LUPD "[p]rovides a secure and safe environment through professional service to the community."  (*Id.*)  This excerpt is not an enforceable contractual term capable of supporting a breach of contract claim. *David v. Neumann Univ.*, 187 F. Supp. 3d 554, 559 (E.D. Pa. 2016) (explaining that student

handbook terms, such as aspirational anti-harassment policy, are not sufficiently definite enough to be enforceable and cannot support a breach of contract claim); *Kim*, No. 21-1879, 2021 WL 4243442, at *4 (a student handbook non-discrimination provision stating that "there should be no discrimination against any student on any basis prohibited by law including race, color, national origin, ancestry, ethnicity, religion, gender, sexual orientation, gender identity, age, veteran status or liability" was not definite enough to create an enforceable affirmative contractual duty on the part of the university.).

Therefore, the Court will grant Defendants' motion for summary judgment on Plaintiff's breach of contact theory as it relates to his claim for failure to provide a safe environment.

### C. v.   Lehigh's Disciplinary Committee or Panel Acted Within Its Rights When It Decided to Expel Plaintiff:

After determining that Plaintiff violated the Student Code of Conduct – Respect for Self, the committee then decided to expel Plaintiff.  In determining that expulsion was an appropriate sanction, the committee considered Plaintiff's significant disciplinary history over the course of his enrollment at Lehigh as outlined in the fact section above.  The disciplinary committee also took into account Plaintiff's failure to learn from his past mistakes.

The Court will not second guess the decision of the educational professionals who reached the conclusion that expulsion was the appropriate remedy.  See, e.g., *Psi Upsilon of Phila v. Univ. of Pa.*, 591 A.2d 755, 758-59 (Pa. Super. Ct. 1991) (explaining that "[g]enerally, it has been said that courts are more reluctant to interfere in the disciplinary proceedings of a private college than those of a public college."); *Kim v. Villanova Univ.*, No. 21-cv-1879, 2021 WL 4243442, at *3 (E.D. Pa. Sept. 16, 2021) (citation omitted) ("[c]ourts are deeply reluctant to get involved in the disciplinary process of private universities," unless "such processes fail to 'comport with basic notions of due process and fundamental fairness.'"); *Schulman v. Franklin*

*& Marshall Coll.*, 538 A.2d 49, 52 (Pa. Super. Ct. 1988) (explaining that "courts have been very reluctant to interfere with college proceedings concerning internal discipline. A college is a unique institution which, to the degree possible, must be self-governing and the courts should not become involved in that process unless the process has been found to be biased, prejudicial or lacking in due process.").

## IV.    CONCLUSION:

For these reason, Defendants' motion for summary judgment is granted.  An appropriate order will be entered by the Court.

BY THE COURT:

  /s/ John Milton Younge
Judge John Milton Younge