**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1235
_____

BRENDAN O'KEEFE,
                                                        Appellant

v.

LEHIGH UNIVERSITY;
LEHIGH UNIVERSITY POLICE OFFICERS JOHN DOE I AND II
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-19-cv-00884)
District Judge: Honorable John M. Younge
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on November 9, 2023

Before: KRAUSE, FREEMAN, and MONTGOMERY-REEVES, *Circuit Judges*

(Filed: January 12, 2024)

_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

KRAUSE, *Circuit Judge*.

After being arrested for public drunkenness, in violation of 18 Pa. Cons. Stat. § 5505, and later expelled from Lehigh University, Brendan O'Keefe sued two Lehigh University Police Department (LUPD) officers and the University for assault and battery and breach of contract. The District Court granted summary judgment to Defendants on all claims. For the following reasons, we will affirm.

## DISCUSSION[1]

O'Keefe asserts that the District Court erred in failing to hold that the LUPD officers committed assault and battery when they forced him to take a breathalyzer test against his will. He also contends that Lehigh University violated its stated procedures and principles of fundamental fairness when it conducted a disciplinary hearing that resulted in his dismissal from the school. We reject both arguments.

### I.    Assault and Battery

A police officer is not liable for assault and battery under Pennsylvania law when he uses "reasonable force to prevent interference with the exercise of his authority or the performance of his duty." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994). Said differently, "[p]olice officers are privileged to commit a battery pursuant to a lawful arrest, but the privilege is negated by the use of excessive force." *Groman v. Township of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995). The test for determining

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1332(a), and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a grant of summary judgment. *Nitkin v. Main Line Health*, 67 F.4th 565, 570 n.2 (3d Cir. 2023).

whether that force is excessive is the same as in the Fourth Amendment context, i.e.,
"whether the police officer's 'actions [were] objectively reasonable in light of the facts
and circumstances.'" *El v. City of Pittsburgh*, 975 F.3d 327, 336 (3d Cir. 2020)
(alteration in original) (quoting *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir.
2004)).

O'Keefe argues that the officers used unreasonable force when they breathalyzed
him against his will because (1) they had "no legitimate reason to subject him to a
portable breath test," Opening Br. 14, and (2) the force they used to conduct that test was
excessive.  Neither argument is persuasive.

*First*, it was not unreasonable for the officers to conduct a breath test in this
circumstance.  According to two eyewitnesses and the arresting officers, O'Keefe was
observed stumbling around and falling after almost being hit by a car, and his speech was
slurred.  Given those reports, the officers had probable cause to arrest O'Keefe for public
drunkenness and to conduct a search incident to arrest.  As the Supreme Court[2] and
Pennsylvania courts have discussed in the context of driving under the influence,
conducting a breath test as a search incident to arrest involves only a "negligible"

---

[2] The Dissent theorizes that the "reasonableness" standard for the force used by a police
officer in connection with an arrest and search might be different for assault and battery
claims under Pennsylvania law than it is for Fourth Amendment claims, Dissent at 3–4,
but the case law is to the contrary.  *See Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa.
1994) (holding that the same "reasonable force to prevent interference with the exercise
of [an officer's] authority or the performance of his duty" is what "determines whether
the police officer's conduct constitutes an assault and battery" under Pennsylvania
law); *Edwards v. City of Philadelphia*, 860 F.2d 568, 572 (3d Cir. 1988) (rejecting
argument that the burden to demonstrate excessive use of force is different in the context
of a battery claim than in the context of a 1983 claim).

physical intrusion. *Birchfield v. North Dakota*, 579 U.S. 438, 461 (2016); *see Commonwealth v. Trahey*, 228 A.3d 520, 532 (Pa. 2020) (quoting *Birchfield*, 579 U.S. at 461, for the proposition that a breath test "does not implicate 'significant privacy concerns'").[3]  In addition, the results of such tests may be admissible at trial upon a showing of "sufficient reliability."[4]  And admissible or not, the test allows police and prosecutors to determine what level of medical care may be necessary and to confirm for charging purposes that what appears to be public drunkenness is likely the result of alcohol and not, for example, drug use or a medical episode.  *See Birchfield*, 579 U.S. at 474; *Trahey*, 228 A.3d at 533.[5]  Though the danger to oneself and others from public

---

[3] The Dissent contends that *Birchfield* does not apply here because it addressed whether a search was unreasonable, not whether officers used excessive force.  Dissent at 6 n.4.  However, "[w]here . . . [an] excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Jones v. City of Philadelphia*, 890 A.2d 1188, 1195 (Pa. Commw. Ct. 2006) (emphasis omitted) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)).

[4] In contrast to the results of stationary breath tests, the results of portable breath tests (PBTs) like the one conducted here have historically been excluded from trials under the Crimes Code as insufficiently reliable.  In *Commonwealth v. Brigidi*, however, the Pennsylvania Supreme Court observed that the results of PBTs may be admissible in such trials if and when the Commonwealth can show that "the technology for these devices has advanced (or advances) to a stage where they manifest sufficient reliability to satisfy prevailing judicial standards governing the admissibility of scientific evidence."  6 A.3d 995, 1001 (Pa. 2010); *see also Commonwealth v. Gross*, 241 A.3d 413, 420 (Pa. Super. Ct. 2020) (recognizing PBTs are not categorically inadmissible in criminal cases but affirming exclusion where the movant "ha[d] not presented evidence and argument sufficient to establish their admissibility").

[5] *See also United States v. Reid*, 929 F.2d 990, 994 (4th Cir. 1991); *Burnett v. Municipality of Anchorage*, 806 F.2d 1447, 1450–51 (9th Cir. 1986); *Byrd v. Clark*, 783 F.2d 1002, 1005 (11th Cir. 1986); *State v. Bernard*, 859 N.W.2d 762, 767–68 (Minn. 2015); *Wing v. State*, 268 P.3d 1105, 1110 (Alaska Ct. App. 2012); *State v. Dowdy*, 332 S.W.3d 868, 869–70 (Mo. Ct. App. 2011).

drunkenness may be less than the danger stemming from drunk driving, it is not insubstantial, as is apparent from the facts of this case. *See* App. 754 (eyewitness testimony describing how O'Keefe was almost hit by a car).

Consequently, some courts have called the *failure* to perform a breath test in connection with an arrest for public drunkenness "problematic."[6] *See, e.g.*, *Brown v. Perugino*, No. 22-cv-01400, 2023 WL 4306761, at *10 (M.D. Pa. June 30, 2023) (considering it "problematic" that the police charged the plaintiff with public drunkenness under 18 Pa. Cons. Stat. § 5505 based only on observations and without giving him a breathalyzer test), *appeal docketed*, No. 23-2303 (3d Cir. July 21, 2023); *Dellenbaugh v. Gobrecht*, No. 18-cv-01108, 2020 WL 5526655, at *6 (W.D. Pa. Sept. 15, 2020) (same). And for that reason, the officers here had a legitimate reason to administer the breath test to O'Keefe.

*Second*, the record does not suggest that the officers used unreasonable force. Because the officers were conducting a search incident to a lawful arrest, they were entitled to use "reasonable force to prevent interference with the exercise of [their] authority or the performance of [their] duty." *Renk*, 641 A.2d at 293; *see also Groman*, 47 F.3d at 634. And the record here, read in the light most favorable to O'Keefe, does

---

[6] O'Keefe points out that the former chief of the LUPD opined in deposition that the LUPD allows a person to refuse a breathalyzer test. The former chief was not speaking to the situation in which a student has been lawfully arrested for public drunkenness. Regardless, we do not "equate [police department] policy violations with constitutional violations." *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009) (concluding that there was no abuse of discretion when a district court excluded department policy in an excessive force case because it could confuse the jury).

not indicate that the officers used any more force than was necessary to administer a breath test to an admittedly uncooperative subject. According to his own testimony, O'Keefe "gag[ged] and choke[d]" and felt "afraid of the cops." App. 646–48. He could not "recall specifically" any lip pain that he experienced, nor could he recall the officers cutting or bruising his lips or the inside of his mouth. App. 646. O'Keefe also testified that he did not bring up any mouth pain to the responding EMTs or to hospital employees, nor did he ever seek medical treatment.

Of course, as O'Keefe argues forcefully and correctly, physical injury is not required to state a claim for battery under Pennsylvania law. *See* Opening Br. 14; *Montgomery v. Bazaz-Sehgal*, 798 A.2d 742, 749 (Pa. 2002). But that is beside the point. O'Keefe's testimony is relevant not because physical injury is an element of a battery claim, but because "[p]olice officers are privileged to commit a battery pursuant to a lawful arrest" unless they use excessive force, *Groman*, 47 F.3d at 634, and the de minimis injuries described by O'Keefe confirm that the force the officers used here was not excessive.

In sum, the District Court correctly concluded that Defendants were entitled to summary judgment on O'Keefe's assault and battery claim.

## II.    Breach of Contract

O'Keefe also challenges the entry of summary judgment against him on his claim for breach of contract. As the District Court observed, "[u]nder Pennsylvania law, the relationship between a student and a private educational institution is contractual." *O'Keefe v. Lehigh Univ.*, No. 19-cv-0884, 2023 WL 137457, at *9 (E.D. Pa. Jan. 9, 2023)

(citing *Reardon v. Allegheny Coll.*, 926 A.2d 477, 480 (Pa. Super. Ct. 2007)). And under that contract, as long as the disciplinary procedures established by a university are "fundamentally fair," a student is entitled "only to those procedural safeguards which the school specifically provides." *Psi Upsilon of Phila. v. Univ. of Pa.*, 591 A.2d 755, 758 (Pa. Super. Ct. 1991) (emphasis omitted) (quoting *Boehm v. Univ. of Pa. Sch. of Veterinary Med.*, 573 A.2d 575, 579 (Pa. Super. Ct. 1990)).

Here, O'Keefe alleges that Lehigh violated its own disciplinary procedures, creating a fundamentally unfair disciplinary process in three respects. Again, however, none of O'Keefe's arguments casts doubt on the District Court's ruling.

*First*, O'Keefe contends that Associate Dean of Students Christopher Mulvihill questioned a witness in a "fundamentally unfair and deceptive manner with the goal of fabricating evidence." Opening Br. 35. While the witness testified that he felt somewhat pressured by Mulvihill to say that O'Keefe appeared drunk, he later reiterated that O'Keefe was indeed visibly drunk, and Mulvihill's interview notes reflect that recollection. Accordingly, whatever the tone of Mulvihill's questioning, it did not result in any fundamental unfairness. *Cf. Melkonian v. Ashcroft*, 320 F.3d 1061, 1072 (9th Cir. 2003) (noting that due process is not violated merely because cross-examination is carried out in a "harsh manner and tone" (quoting *Antonio-Cruz v. Immigr. & Naturalization Serv.*, 147 F.3d 1129, 1131 (9th Cir. 1998))); *Halsey v. Pfeiffer*, 750 F.3d 273, 304 (3d Cir. 2014) (explaining that the law "permits the police to pressure and cajole" (quoting *United States v. Rutledge*, 900 F.2d 1127, 1131 (7th Cir. 1990))).

*Second*, O'Keefe argues that Lehigh failed to ensure that the hearing panel made a credibility determination on the eyewitness statements, as recounted in Mulvihill's interview notes. But O'Keefe did not call those witnesses at the hearing, as he was entitled to do, and Mulvihill testified that he believed that the panel members made a credibility determination about the witnesses "as part of their evaluation of the information presented at the hearing." App. 984. Although the panel did not make a specific record of that credibility determination, no such record is required by the Lehigh Student Handbook or as a matter of fundamental fairness. App. 1252; *Fisler v. State Sys. of Higher Educ., Cal. Univ. of Pa.*, 78 A.3d 30, 46 (Pa. Commw. Ct. 2013) (explaining that "explicit credibility determinations" were not required as part of a public university employee's disciplinary hearing); *Carney v. Pa. State Sys. of Higher Educ.*, No. 1177 C.D. 2013, 2014 WL 3954072, at *9 (Pa. Commw. Ct. Aug. 14, 2014) (same).

*Third*, O'Keefe contends that Lehigh's withholding of an "exculpatory incident report" and body camera footage violated its duty to disclose "all known relevant facts" to the disciplinary panel. Opening Br. 44; App. 1261. In fact, however, the summary of the incident report that Lehigh presented to the disciplinary panel comported with the original report O'Keefe references, and the record on summary judgment reflects that Lehigh lacked access to the body camera footage. Lehigh had no obligation to produce "duplicative" evidence, *Commonwealth v. Mulholland*, 702 A.2d 1027, 1033 (Pa. 1997); *see also Commonwealth v. Lambert*, 884 A.2d 848, 856 (Pa. 2005) (no obligation to produce "police activity sheet" when the information contained on the sheet was produced in the form of a separate "police statement"), nor did it need to produce

evidence not within its "possession, custody, or control," *see* Fed. R. Crim. P. 16(a)(1)(E); Fed. R. Civ. P. 34(a)(1).

Ultimately, O'Keefe disagrees with the decision rendered by Lehigh's hearing panel, but he does not identify any step that was fundamentally unfair and thus provides no basis to resurrect his breach-of-contract claim.

## CONCLUSION

For the foregoing reasons, we will affirm the judgment of the District Court.

FREEMAN, *Circuit Judge*, dissenting in part and in the judgment.

I agree that Lehigh University is entitled to summary judgment on O'Keefe's contract claim, but I respectfully dissent from the portion of the majority's opinion that affirms the judgment for the defendant LUPD officers on O'Keefe's assault and battery claim.  Under Pennsylvania law, assault and battery by police officers is evaluated according to the reasonableness of the circumstances.  Given the circumstances here, a reasonable jury could conclude that the officers committed an assault and battery when they used unnecessary or excessive force in administering a portable breath test ("PBT").

I

In Pennsylvania tort law, an "[a]ssault is an intentional attempt by force to do an injury to the person of another," and a battery occurs "whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994).  But the standard is different for law enforcement officers: a police officer may use "reasonable force to prevent interference with the exercise of his authority or the performance of his duty." *Id.*  "[T]he reasonableness of the force used" determines whether an officer's use of force constitutes an assault and battery.  *Id.*; *see also Shovlin v. Commonwealth*, 106 Pa. 369, 371 (1884) (police are guilty of "assault and battery in making [an] arrest" if they "use[] more force than [is] reasonably necessary under the circumstances").  Force is unreasonable if it is either unnecessary or excessive.  *Renk*, 641 A.2d at 293 ("A police officer may be held liable for assault and battery when a jury determines that the force used in making an arrest is unnecessary *or* excessive." (emphasis added)).

1

Therefore, under Pennsylvania law, O'Keefe's assault and battery claim against the officers withstands summary judgment if a jury could conclude that the officers used unnecessary force or excessive force in administering the PBT to him. In my view, the record supports such a finding.

A

Viewing the facts in O'Keefe's favor, the circumstances are as follows:

O'Keefe was walking on a public street when the officers suspected him of public drunkenness. They arrested him, handcuffed him, and called an ambulance to transport him to the hospital. After the ambulance arrived and O'Keefe was seated inside it (while still handcuffed), one of the officers attempted to administer a PBT. The officer did not inform O'Keefe that he had a right to refuse the PBT. Still, O'Keefe refused it, and the officers administered the PBT anyway. They did so by "jamm[ing]" the device in his mouth several times, causing him to "gag and choke." App. 644. By administering the PBT absent O'Keefe's consent, the officers violated LUPD policy.[1] And the results of that PBT—like all PBT results—are not admissible to prove any crime in Pennsylvania courts.[2]

---

[1] The LUPD Chief at the time of O'Keefe's arrest testified that LUPD officers could administer PBTs only with the consent of a suspect. And he testified that once a suspect is in an ambulance, there is no need to administer a breath test unless an ambulance attendant requests one. Nothing in the record suggests that the emergency medical technicians requested that the officers conduct a PBT.

[2] The LUPD Chief testified that a BAC reading from a PBT is "not admissible in a court of law." App. 1019. Pennsylvania case law confirms that he is correct as a general matter, notwithstanding potential advances in technology in the future. *See Commonwealth v. Brigidi*, 6 A.3d 995, 1000–01 (Pa. 2010) (holding that the results from

2

If proven, these facts support a finding that the PBT was unnecessary (and therefore unreasonable) for three reasons. *See Renk*, 641 A.2d at 293. First, the officers had already arrested O'Keefe when they administered the PBT, so the test results could not contribute to their probable cause for the arrest. Second, the results couldn't inform the officers' decision to seek medical treatment for O'Keefe, as the officers had already summoned an ambulance to transport him to the hospital. Third, the results could not be used as evidence to prosecute O'Keefe.

The majority relies on *Birchfield v. North Dakota* to conclude that the officers did not act unreasonably and had a legitimate reason to administer the PBT to O'Keefe. In *Birchfield*, the Supreme Court held that the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving. 579 U.S. 438, 474 (2016). But that decision does not control here because it involved a different cause of action (a federal constitutional claim, not a state tort claim), a different suspected offense (DUI, not public drunkenness), and a different type of breath test (a stationary test, not a PBT).

First, O'Keefe has brought a Pennsylvania tort claim, not a Fourth Amendment claim. So even if *Birchfield* applied to the circumstances of this case and established that the officers' actions were constitutional, that would not control the outcome here. After all, states may provide greater protections than the United States Constitution provides.

---

"preliminary alcohol testing" have "obvious reliability concerns" and "are appropriate for field screening purposes only" unless technology improves); *see also, e.g.*, *Commonwealth v. Gross*, 241 A.3d 413, 419–20 (Pa. Super. Ct. 2020) (upholding the exclusion of PBT results in a criminal case for lack of proof of reliability).

3

*See Virginia v. Moore*, 553 U.S. 164, 176 (2008) (explaining that states may "act[] to constrain officers' discretion," but that "state restrictions do not alter the Fourth Amendment's protections"). In other words, Pennsylvania may choose to prohibit law enforcement officers from engaging in conduct that is constitutionally permissible. We must therefore adhere to state law, which says that assault and battery by law enforcement officers requires an assessment of the reasonableness of the circumstances. Reasonableness need not be coextensive with constitutionality.[3]

Second, in *Birchfield* the Supreme Court reasoned that a drunk driving suspect's privacy interest is outweighed by a state's interest in fighting drunk driving. 579 U.S. at 464–65 (stating that governments have a "paramount interest" in preserving the safety of public highways in the face of "the 'carnage' and 'slaughter' caused by drunk drivers"). The Court did not do any interest-balancing when considering public drunkenness laws. But assuming Pennsylvania has an interest in enforcing public drunkenness laws to protect individuals from dangerous levels of intoxication, a jury could find that the officers did not reasonably pursue that interest here. As discussed above, O'Keefe has

---

[3] Neither our precedent nor Pennsylvania precedent suggests otherwise. In *Renk*, Pennsylvania's highest court set out the reasonableness standard for assault and battery claims against law enforcement officers without referring to the state constitution or the United States Constitution. 641 A.2d at 289–94. And our opinion in *Edwards v. City of Philadelphia*, 860 F.2d 568 (3d Cir. 1988) has no bearing on this question of Pennsylvania law. In that pre-*Renk* decision, we merely recognized that plaintiffs bear the burden of proving excessive force in common law battery claims. *Id.* at 570–73 (rejecting an argument that defendants must prove that the force they used was reasonably necessary); *id.* at 573 n.4 (observing that Pennsylvania appears to place the burden of proof on plaintiffs, not defendants, when considering state assault and battery claims).

4

presented evidence that the officers administered an unwanted PBT to him while he was sitting in an ambulance and EMTs were present. A jury could find that it was unreasonable for the LUPD officers to administer that PBT in the presence of medical professionals, who were better trained to confirm O'Keefe's intoxication and rule out a medical episode, regardless of whether that information was useful for charging purposes.

Third, as the majority recognizes, the results of PBTs are generally inadmissible in Pennsylvania criminal prosecutions. *See supra* note 2. When the Supreme Court held in *Birchfield* that law enforcement officers may administer breath tests as a search incident to a DUI arrest, it was discussing stationary breath tests that can be used to further a state's compelling interest in obtaining evidence to prosecute DUI offenses. *Birchfield*, 579 U.S. at 464–66, 474. There is no analogous compelling interest in administering a PBT in Pennsylvania.

In sum, a reasonable jury could find that it was unnecessary for the officers to administer a PBT to O'Keefe and that the force used to administer it was an assault and battery. *See Renk*, 641 A.2d at 293; *Montgomery v. Bazaz-Sehgal*, 798 A.2d 742, 749 (Pa. 2002) (holding that a battery occurs under Pennsylvania law when there is contact; no physical injury is required).

B

The record also supports a finding that the officers used excessive force under the circumstances. O'Keefe testified that the officers "repeatedly jammed" the PBT into his mouth with force; they did so while he was handcuffed and was trying to refuse the

breath test; and they caused pain to his lips and mouth. App. 644–48. A jury could conclude that the amount of force the officers used in these circumstances was excessive and constituted an assault and battery. *See Renk*, 641 A.2d at 293.

The majority concludes otherwise. It relies on the premise that the officers administered the PBT to O'Keefe as a search incident to a lawful arrest under *Birchfield*, so the officers could use reasonable force to prevent interference with their duties.[4] As discussed above, it is far from clear that *Birchfield* controls, and the record supports a finding that the officers had no evidence-preservation or officer-safety interest in searching O'Keefe with a PBT when he was already in custody and in an ambulance.[5] *Riley v. California*, 573 U.S. 373, 384–85 (2014) ("concerns for officer safety and evidence preservation underlie the search incident to arrest exception" to the Fourth

---

[4] To the extent that the majority relies on the Supreme Court's statement in *Birchfield* that breath tests impose "an almost negligible physical intrusion," that reliance is misplaced. *Birchfield*, 579 U.S. at 461. *Birchfield* did not address the excessive force question—it addressed whether breath tests violate the Fourth Amendment's prohibition of unreasonable searches, not the Amendment's prohibition of unreasonable seizures. 579 U.S. at 456–57. And when the Court commented about a negligible physical intrusion, it was discussing stationary breath tests (not PBTs) that require a suspect to cooperate by inserting a mouthpiece into his own mouth. *Id.* at 446–47, 462. But even assuming that *Birchfield* has some bearing on the quantum of force law enforcement officers generally use to administer PBTs, a reasonable jury viewing this record could still conclude that these officers used more force than necessary under these circumstances.

[5] The majority concludes that the PBT in this case was a search incident to arrest absent any briefing about that question in the District Court or on appeal. In my view, that conclusion is not supported by the record, so it is not an appropriate basis upon which we may affirm the District Court's order. *See Laurel Gardens, LLC v. Mckenna*, 948 F.3d 105, 116 (3d Cir. 2020) (stating our general rule that we may affirm on any basis supported by the record).

Amendment search warrant requirement).  But even assuming a PBT was a constitutional

search incident to arrest, on this record, there is a dispute about whether it was reasonable

to administer a PBT to O'Keefe at all.  *See supra* Section I.A.  A jury could therefore

conclude that it was unreasonable for the officers to administer that unnecessary test to

O'Keefe by repeatedly jamming the device into his mouth.  *See Renk*, 641 A.2d at 293;

*accord Graham v. Connor*, 490 U.S. 386, 397 (1989) (holding that, in the Fourth

Amendment context, "the reasonableness inquiry in an excessive force case is an

objective one: the question is whether the officers' actions are objectively reasonable in

light of the facts and circumstances confronting them" (internal quotation marks

omitted)).

*     *     *

Viewing all facts in O'Keefe's favor, a reasonable jury could conclude that the

LUPD officers committed an assault and battery in administering the PBT.  For these

reasons, I would reverse the judgment for the officers on the assault and battery claim.